### ARDSLEY HALL CO. v. SIRRETT.

#### (Supreme Court, Appellate Term. February 23, 1904.)

1. LANDLORD AND TENANT—ELEVATOR—STOPPAGE FOR REPAIRS—LENGTH OF TIME—REASONABLENESS.

     In an action for rent under a lease requiring the landlord to maintain an elevator, and giving him the right, in case of accident, to stop the operation of it long enough to make needed repairs, the question of whether or not the elevator had been stopped for repairs an unreasonable time, as claimed by defendant, was one of fact for the trial court.

Appeal from Municipal Court, Borough of Manhattan, Twelfth District.

Action by the Ardsley Hall Company against Lucien L. Sirrett. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before FREEDMAN, P. J., and GIEGERICH and McCALL, JJ.

Sheehan & Collin (John L. Wells and Thomas L. Hughes, of counsel), for appellant.

John A. Stephens, for respondent.

GIEGERICH, J. The action is to recover rent of an apartment in the building known as "Ardsley Hall," situate at the southwest corner of Ninety-Second street and Central Park West, in the borough of Manhattan, under the terms of a written lease. The defense is eviction by reason of the alleged failure of the plaintiff to furnish a proper and adequate elevator service. The lease, among other things, provides:

"Seventh. The landlord will have in operation in said building a passenger elevator, which shall be run continuously for the use of the tenants." "Ninth. In case it shall become necessary at any time by reason of accident or from

any injury to the elevator * * * to make any repairs or improvements, the landlord shall have the right to stop the operation of the elevator * * * for such time as shall be necessary to make the needed repairs, and put said elevator * * * in good working order, but no more time shall be employed than is absolutely necessary."

It appeared in evidence that, during the period in suit there were two elevators in the building, which was used as a fashionable apartment house—one for passengers; and another, of the same kind and pattern, located immediately adjoining, and opening from the same hallway, which was used by servants and maids of tenants and for the carriage of property of tenants, and was known as the "freight elevator." It was also shown upon the trial that on January 3, 1903, an accident occurred to the freight elevator, which prevented its use for about one day, and that the landlord caused it to be repaired as speedily as possible. It further appeared in evidence that on Saturday evening, April 25, 1903, about 6 or 7 o'clock, an accident occurred to the same elevator, which prevented its use, and that on the following morning at about half past 10 o'clock an accident occurred to the passenger elevator also, which prevented its use; that on the same morning, but before the accident to the passenger elevator, the plaintiff consulted the manufacturer who had in part built the elevators in the building, and gave him orders to repair the freight elevator, and when the accident to the passenger elevator occurred he was again called to the building by the plaintiff, reached it at noon, and at 3 o'clock in the afternoon of the same day he had five men at work under his direction repairing the freight elevator, and that these men worked continuously all that day and night, and were relieved by new men on the following (Monday) morning, who worked until the afternoon, when, according to the testimony of the plaintiff's witnesses, the freight elevator was again in working order, and was used for the carrying of passengers. It further appeared in evidence that work was immediately commenced on the passenger elevator, and continued without interruption until it was ready for operation, which the plaintiff's witnesses testified was about the middle of May, or a period of 18 or 20 days. The defendant occupied the apartment until May 9th, when he and his wife left, but the servants remained for the purpose of packing the goods until May 15th, when they also departed, at which time, as they testified, the passenger elevator had not been restored to service.

According to the terms of the lease, as I construe it, the landlord was bound to provide but one elevator. He did provide two. Except for an interval of two or three days in April, at least one was always at the service of the occupants of the building. It is not questioned by the defendant that the plaintiff had the right, under the ninth clause of the lease, to stop the operation of the elevator for the purpose of making "needed repairs," but it is urged that the necessity for such repairs must be due to "wear and tear or accidents incidental to ordinary use," and not defective construction. I, however, do not understand such to be the purpose of this clause, which expressly gives the right to stop the operation of the elevator not only when it is necessary to repair, but also to improve, it.

It is also objected by the defendant that his wife "could not trust herself to the freight elevator," which, as seen, was used the greater part of the time the passenger elevator was being repaired; but the record is barren of any proof that it was unsafe after it was repaired in April. The defendant does not claim that the elevators could have been repaired any sooner than they were. In fact, the undisputed evidence shows that they were made with all possible dispatch. Under the circumstances disclosed, I am of the opinion that defendant was not deprived of elevator service for an unreasonable time. It results from these views that the judgment must be affirmed, with costs.

Judgment affirmed, with costs.

FREEDMAN, P. J. (concurring). I concur in the result upon the ground that, whether or not the operation of the passenger elevator was suspended for a longer time than was absolutely necessary to make needed repairs, as provided for by the terms of the lease, was a question of fact to be determined by the trial court from all the testimony given, and proper inferences to be drawn therefrom, and that, he having found in favor of the plaintiff upon that question, his judgment should not be disturbed.

McCALL, J. (concurring). I concur in the result reached by my colleagues in this case. It would be utterly absurd to favor the contention raised by the appellant. Given a defective condition in an elevator or carriage or the mechanism pertaining thereto, which is operated through a building at least 10 stories high for the purpose of carrying individuals up and down, no matter whether the defect was inherent in the structure or was caused by the wear and tear, it was the duty of the owner of the premises to stop the operation thereof to prevent a possible catastrophe, and I believe that the provision in the lease as to elevators was framed for the purpose of meeting just such an emergency. The only question, therefore, presented by this litigation, is, in my judgment, whether or not any unreasonable delay was occasioned in repairing same. The court has passed upon that as a question of fact, and from this record I cannot see how it could have reached any other conclusion than that returned.